MATTER OF LAQUI

In Deportation Proceedings

A-14504742

*Decided by Board April 23, 1969*

Since deportation proceedings are civil rather than criminal in nature, the calling of respondent as a Government witness to identify certain documents in the deportation proceedings against her, over objections of her attorney, does not constitute a denial of due process, in the absence of a claim of self-incrimination by respondent.*

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant (exchange visitor) remained longer.

ON BEHALF OF RESPONDENT:
Samuel B. Myers, Esquire
134 North LaSalle Street
Chicago, Illinois 60602

ON BEHALF OF SERVICE:
Irving A. Appleman, Esquire
Appellate Trial Attorney

This is an appeal from an order of the special inquiry officer dated January 17, 1969, finding the respondent deportable as charged and granting her the privilege of voluntary departure. On this appeal, counsel for respondent contends that the hearing conducted by the special inquiry officer deprived her of due process of law. This contention is based on the fact that the finding of deportability is predicated on respondent's own testimony, taken over her attorney's objection, when she was called as the Service's first and only witness. We find no merit to the appeal.

The record before us reflects the following undisputed facts: On December 9, 1968, an order to show cause was issued in deportation proceedings, charging that Juliana Laqui was subject to deportation on the above-stated charge, based on the facutal allegations that (1) she is an alien; (2) she is a native and citizen of the Philippines; (3) she entered the United States at Detroit on or about October 14, 1967; (4) she was then admitted as an ex-

---

* Reaffirmed, 422 F.2d 807 (C.A. 7, 1970).

change visitor; (5) she was authorized to remain in the Untied States until November 3, 1968; and (6) she had remained here beyond that date.

At the hearing before the special inquiry officer, at which she was represented by counsel, respondent conceded she was the person named in the order to show cause. Her attorney denied the factual allegations and deportation charge contained in the order to show cause and put the Service to its proof. The Service's trial attorney thereupon proceeded to question respondent concerning certain documents which had been marked for identification. Her attorney objected on the ground that the Service should not be permitted to make its case out of respondent's own mouth. The special inquiry officer overruled the objection. Over her attorney's continuing objections, respondent identified as relating to her various documents (Exhibits 2, 3, 4 and 5) which were then received in evidence over objection. These documents clearly, convincingly, and unequivocally establish the truth of the factual allegations recited in the order to show cause and confirm her deportability on the charge laid against her. In an oral decision, the special inquiry officer found her deportable as charged and granted her the privilege of voluntary departure.

On appeal, counsel argues in substance that the trend of recent judicial decisions has been such that deportation proceedings can no longer be considered strictly civil in nature. In deportation proceedings as in criminal prosecutions, he contends, the Government must establish its case by adducing its own evidence, without calling the other party to the proceeding as a witness and using that party's own testimony to make out its case.

This proposition, though advanced here for the first time in a long while, is not new and has previously been categorically rejected. See *Caetano v. Shaughnessy*, 133 F. Supp. 211 (S.D.N.Y. 1955). In an unbroken line of cases, the courts have held that the deportation process is civil, not criminal, in nature; and they have consistently rejected the notion that the constitutional and other limitations governing criminal prosecutions apply in alien expulsion proceedings.[1]

---

[1] *Fong Yue Ting v. United States*, 140 U.S. 698, 730 (1893); *Zakonaite v. Wolf*, 226 U.S. 272 (1912); *Bugajewitz v. Adams*, 228 U.S. 585 (1913); *Bilokumsky v. Tod*, 263 U.S. 149 (1923); *Mahler v. Eby*, 264 U.S. 32 (1924); *Harisiades v. Shaughnessy*, 242 U.S. 580 (1952); *Galvan v. Press*, 347 U.S. 522 (1954); *Marcello v. Bonds*, 349 U.S. 302 (1955); *Lehmann v. Carson*, 353 U.S. 685 (1957). For recent lower court decisions, see *Ben Huie v. I.N.S.*, 349 F.2d 1014 (9 Cir., 1965); *Burr v. I.N.S.* 350 F.2d 87 (9 Cir., 1965) cert. denied 383 U.S. 915; *Nason v. I.N.S.*, 370 F.2d 865 (2 Cir.,

In view of the drastic impact of deportation upon the lives of the aliens affected, the Supreme Court has prescribed a narrow rule of statutory construction, *Fong Haw Tan v. Phelan*, 333 U.S. 6 (1948), and has imposed a burden of proof more onerous than the preponderance rule ordinarily applicable in civil matters, *Woodby v. I.N.S.*, 385 U.S. 276 (1966). In doing so, however, the Court made it plain that "a deportation proceeding is not a criminal prosectuion," 385 U.S. at 285; and it significantly refused to exact the burden imposed in criminal cases of proving the essential facts beyond a reasonable doubt.

In criminal prosecutions, the Government may not call the defendant as a witness because the Fifth Amendment forbids such a course. No such prohibition applies to civil proceedings, and it is common practice in civil litigation to call the opposing party as a witness. See, e. g., Fed. R. Civ. P. 26(a), 33, 36, 43(b). In deportation proceedings, as in other civil proceedings, when called as a witness the respondent has the privilege accorded all witnesses of refusing to supply self-incriminating testimony, *Valeros v. I.N.S.*, 387 F.2d 921 (7 Cir., 1967). Absent such a claim of self-incrimination (and there was no such claim here),[2] there appears to be no reason why the testimony of the respondent as a party to the deportation proceedings should not be adduced by the Service.

Congress has specifically empowered special inquiry officers to take the sworn testimony of "any person touching the privilege of any alien or person he believes or suspects to be an alien to ... reside in the United States;" to issue subpoenas requiring the attendance of such witnesses; and to invoke the aid of the courts in enforcing such subpoenas, section 235(a) of the Act; see also section 287(b). These provisions, and their forerunners in prior statutes, have been construed as applying not only to outside witnesses but also to the person who is himself the subject of the deportation proceeding, *Loufakis v. United States*, 81 F.2d 966 (3 Cir., 1936); *Graham v. United States*, 99 F.2d 746 (9 Cir., 1938); *Sherman v. Hamilton*, 295 F.2d 516 (1)Cir., 1961) cert. denied

---

1967); *Chabolla-Delgado v. I.N.S.* 384 F.2d 360 (9 Cir., 1967) cert. denied 393 U.S. 865; *Cortez v. I.N.S.* 395 F.2d 965 (5 Cir., 1968); *Kwai Chiu Yuen v. I.N.S.* 406 F.2d 499 (9 Cir., 1969). The most recent decision, *Yiu Fong Cheung v. I.N.S.* (D.C. Cir., March 20, 1969), states at footnote 10, "Since the expulsion process is not a criminal proceeding there is no right to remain mute at the deportation hearing ..."

[2] At the oral argument, counsel for the respondent with commendable candor acknowledged (Tr. p.3) that respondent has no basis for such a claim.

369 U.S. 820. It seems clear that Congress did not intend to shield the alien from becoming an unwilling witness at his own deportation hearing.

It is true that due process requires that the deportation hearing procedures meet currently prevailing standards of fairness, *Wong Yang Sang* v. *McGrath*, 339 U.S. 33 (1950). We can see nothing inherently unfair in requiring a person suspeced of being an alien to testify as to the true facts, even though his own testimony may lead to his deportation. Indeed, once alienage is established, the statute places the burden on the alien to show the time, place, and manner of his entry and creates a presumption of deportability if he fails to sustain that burden. See section 291 of the Act.

Effective enforcement of the immigration laws requires that the true facts be established with a minimum of delay. If the subject of the inquiry is permitted to remain mute, the Service must resort to other sources to establish the facts, and this usually takes additional time, trouble, and expense. We see no valid reason to impose on the Service this extra burden which confers no corresponding legitimate benefit on the alien or any one else. Delay as an end in itself, whether achieved by obstructionism or dilatory tactics, cannot in our view be considered a legitimate object. See *Li Cheung* v. *Esperdy*, 377 F.2d 189 (2 Cir., 1967); *Kwong Chau* v. *Esperdy*, 276 F. Supp. 897 (S.D.N.Y., 1967); *San Filippo* v. *Mulcahey*, 168 F. Supp. 877 (D. Mass., 1958).

As we pointed out in *Matter of Aguirre,* Interim Decision No. 1940, execution of the special inquiry officer's order has been stayed during the pendency of this appeal.

ORDER: It is ordered that the appeal be and it is hereby dismissed.

*It is further ordered* that, pursuant to the special inquiry officer's order, the respondent be permitted to depart from the United States voluntarily within 30 days from the date of this decision or any extension beyond that date as may be granted by the District Director; and that, in the event of failure so to depart, the respondent shall be deported as provided in the special inquiry officer's order.